**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **PROVEN NETWORKS, LLC.,** *Plaintiff* | § § § § § § § § § § | **W-20-CV-00369-ADA** |
| **-vs-** | | |
| **NETAPP, INC.,** *Defendant* | | |

### ORDER GRANTING DEFENDANT NETAPP, INC.'S MOTION TO TRANSFER FOR TRIAL TO THE NORTHERN DISTRICT OF CALIFORNIA

Came on for consideration Defendant NetApp, Inc.'s ("Net App" or "Defendant") Motion to Transfer for Trial to the Northern District of California (the "NDCA") (the "Motion"). ECF No. 35. Plaintiff Proven Networks, LLC ("Proven" or "Plaintiff") filed its Response, entitled Proven Networks, LLC's Opposition to Defendant's Motion to Transfer Trial to the Northern District of California, on January 4, 2021. ECF No. 36. Defendant timely filed its Reply. ECF No. 37. After considering the parties' briefs and the relevant law, the Court **GRANTS** NetApp's Motion for the reasons set out below.

### I. FACTUAL BACKGROUND

The instant case is one of several cases ongoing in this District for MDL proceedings. All pretrial proceedings, including discovery, claim construction, and dispositive motions will proceed in this District. Thus, the sole question is whether the case should be transferred to the NDCA for trial only.

Proven filed this lawsuit accusing NetApp of infringing U.S. Patent No. 7,450,507 ("'507 Patent") (the "Asserted Patent"). ECF No. 35 at 1–2. Proven alleges that certain aspects of Storage Quality of Service (QoS) within NetApp's ONTAP 9.4 and later versions (the "Accused

Functionality") and storage and network controllers running these versions of ONTAP software (collectively, the "Accused Products") infringe the Asserted Patent.

Proven is a limited liability company organized and existing under the laws of the State of California. ECF No. 22 ¶ 5. Defendant NetApp is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Sunnyvale, California. ECF No. 22 ¶ 6; ECF No. 41 ¶ 6.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that

make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.,* 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Neither party contests that venue is proper in the NDCA and that this case could have been brought

3

there. ECF No. 35 at 8. *See* ECF No. 36. This Court finds that venue would have been proper in the NDCA had it been originally filed there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

### A. The Private Interest Factors

#### *i. The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc*., 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

NetApp states that ONTAP was originally developed in the NDCA and that all relevant technical, product development, marketing, sales and financial documents are in the NDCA, and not in the WDTX. ECF No. 35 at 11.

Proven argues that NetApp simply offers vague allegations that its documents are accessible in the NDCA and that it fails to meet its burden to show that the documents are *more* accessible there. ECF No. 36 at 3. Proven further argues that all documents referenced are electronically available, including the source code, and can be easily produced in this District. Last, Proven states that NetApp's arguments under this factor are moot given this case is subject to MDL proceedings in this District.

4

The Court agrees with Proven's final assertion: this factor is moot given the nature of the MDL proceedings. This factor focuses on ensuring the convenience of discovery proceedings in preparation for trial. NetApp requests transfer of this case to the NDCA for *trial only*. All pretrial proceedings, specifically discovery, will occur in this District, even if this case were transferred to the NDCA for trial.

Therefore, the Court finds that this factor is moot and gives it no weight.

### *ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

For this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc,* 2020 WL 3415880, at *10. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014). Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015).

NetApp points to the four inventors of the '507 Patent, noting that all four reside in the NDCA. ECF No. 35 at 4. NetApp further lists eight potential prior art trial witnesses who also reside in the NDCA. *Id.* at 4–5. Last, NetApp argues that the '507 Patent was developed by Riverstone Networks, which resides in California. *Id.* at 5. According to NetApp, former Riverstone Networks employees are likely trial witnesses, including Sanjay Jain. *Id.* Having

pointed to 13 likely non-party witnesses located in the NDCA, NetApp argues that none of the witnesses have indicated a willingness to testify in the WDTX. *Id.* at 8. Furthermore, NetApp contests that no third-party witnesses are within the WDTX's subpoena power. *Id.*

Proven disputes NetApp's stance on the willingness of the third-party witnesses provided by NetApp. Proven argues that NetApp fails to show the identified witnesses are unwilling to testify at trial. ECF No. 36 at 7. Proven further argues that the witnesses should be given little weight, as NetApp merely identifies the company that makes or sells the devices at issue. *Id.* Per Proven, NetApp's named witnesses are simply an act of cherry-picking individuals located in the NDCA. Last, Proven states that the remaining third-party witnesses may be subpoenaed under Rule 45 and that third-party witness deposition testimony would not be inconvenient. *Id.* at 8–9. Neither party identifies specific witnesses subject to the WDTX.

While the Court remains skeptical of the practicality of long lists of third-party witnesses to be used at trial, there is no doubt that should a third-party witness provide testimony at trial, that witness would likely come from the NDCA. NetApp articulates thirteen potential witnesses, all of whom reside in the NDCA. No third-party witnesses reside in the WDTX. *See In re Apple, Inc.*, 581 F. App'x at 889. Even if NetApp is cherry-picking witnesses, Proven does not counter with any cherry-picked witnesses of its own. The Court does not condone or encourage random or cherry-picked names simply to propose or defeat a motion to transfer. However, the Court's discretion and analysis is limited when all names fall on one side of the ledger, as they do here.

Accordingly, this factor weighs strongly in favor of transfer.

### iii. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a

matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Sept. 27, 2021). The Federal Circuit has indicated that time is a more important metric than distance. *Id.* When considering this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

NetApp posits that no party witnesses are located in the WDTX. ECF No. 35 at 9. Instead, likely witnesses knowledgeable about design and operation, product development, finance, licensing and sales and marketing, are based in the NDCA. NetApp's technical witnesses are also located in North Carolina, for whom travel would be inconvenient regardless of the venue. NetApp contests that Proven provides no evidence that any of the unnamed NetApp employees in the Austin area are likely to be witnesses at trial. No jurisdictional discovery was sought in this case. ECF No. 37 at 3.

Proven argues that NetApp's seven party witnesses have duplicative knowledge and are unlikely to testify at trial. Proven further highlights NetApp's "admission that relevant witnesses are located in North Carolina." ECF No. 36 at 5. Last, Proven points to the 40 NetApp employees located in the Austin area, some of whom may have relevant knowledge about the case.

The Court summarily rejects NetApp's arguments regarding the convenience of Plaintiff's potential witnesses that reside in Los Angeles. Certainly, convenience factors into a plaintiff's decision of where to file a lawsuit. This Court need not disturb Plaintiff's own determination of

convenience. However, the Court agrees that relevant witnesses are likely in the NDCA. While Proven argues that 40 employees with relevant knowledge exist in the WDTX, it is unclear exactly what that knowledge is. Moreover, Plaintiff's vague assertions regarding employee knowledge in the WDTX fail to overcome the specificity provided in NetApp's proposed witness list. While not all of the proposed witnesses will actually testify in trial, specific relevant witnesses exist in the NDCA compared to an unspecific group of witnesses in the WDTX. If such witnesses were named with specificity and found to be relevant during discovery, perhaps the court would weigh this factor differently.

Regarding the proposed witnesses from North Carolina, the Federal Circuit provided the following analysis regarding witnesses located in New York that would need to travel to either the WDTX or NDCA:

> Although it might be true that these individuals will need to travel a greater distance to reach NDCA than WDTX, and although a flight from New York to WDTX might take a bit less time than from New York to NDCA, in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs. As expressed in Genentech, the 100-mile rule should not be rigidly applied where witnesses will be required to travel a significant distance no matter where they testify. These witnesses will only be slightly more inconvenienced by having to travel to California than to Texas.

*In re Apple Inc.*, 979 F.3d at 1342 (internal quotations and citations omitted). This Court similarly finds that travel from North Carolina to the NDCA is more inconvenient than travel to the WDTX.

Accounting for the convenience to the named witnesses in the NDCA, the slight inconvenience for witnesses traveling from North Carolina, and the unspecific employees in the WDTX, the Court finds that this factor weighs in favor of transfer.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3. Here, the co-pending litigation is a series of MDL proceedings focused on streamlining the pre-trial process.

NetApp makes three arguments regarding this factor. First, Proven chose to assert its patents in the NDCA when it sued NetApp and the transfer factors must be assessed at the time the suit was filed. ECF No. 35 at 12. Second, any pre-trial efficiencies gained in the multiple lawsuits are captured by the MDL process itself. *Id.* Last, it is clear error to set aside the convenience considerations solely in the name of judicial economy. *Id.* at 13.

Proven argues that transfer to another court, *unfamiliar* with the parties and particular issues of the case is the opposite of judicial economy. ECF No. 36 at 10. Plaintiff similarly rejects NetApp's characterization of the other pending cases, stating that only one originated in the NDCA, one in the Eastern District of Texas, and seven others in this District, including another case that involves this same '507 Patent. *Id.*

Ordinarily, the Court would find Plaintiff's argument persuasive. Yet, these circumstances present a slightly different scenario. Whether transferred or not, this case will proceed for all pre-

trial purposes in this District subject to the MDL. Thus, judicial economy will be served no matter the disposition of this Motion.

Therefore, the Court finds that this factor is neutral.

## B. The Public Interest Factors

### *i. Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* The instant case presents a more novel analysis of this factor.

This case, once transferred, would be immediately ready for trial. Therefore, any analysis regarding the time to trial post-transfer is increasingly speculative and insufficient to prevent transfer to a more convenient forum. *See In re Genentech*, 566 F.3d at 1347. Given the nature of the MDL process, the Court finds this factor is moot and gives it no weight.

### *ii. Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). As the Federal Circuit has instructed, the focus is on where the events forming the basis for infringement occurred, and not

the parties' generalized connections to the forum. *In re Juniper Networks, Inc.*, No. 2021-160, slip op. at 9–10 (Fed. Cir. Sept. 27, 2021).

To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, No. 2021-160, slip op. at 9–10 (Fed. Cir. Sept. 27, 2021). NetApp argues that its headquarters are in the NDCA and that ONTAP software was created in the NDCA. Proven counters that NetApp has employees and office space in this District, and that the Accused Products are sold in Texas. Mere sales in Texas, amongst sales throughout the United States, do not create a local interest. *See In re Nintendo*, 589 F.3d at 1198 (finding the citizens of the transferor venue had "no more or less of a meaningful connection to the case than any other venue" because the products were "sold throughout the United States"). Similarly, NetApp's generalized presence in the NDCA is insufficient.

Instead, the Court turns its focus to where "the accused products were designed, developed, and tested." *In re Apple Inc.*, 979 F.3d at 1345. All else being equal—generalized presence and national sales carrying no weight—development of the Accused Product in the NDCA with nothing to counter in the WDTX tips the scales. Therefore, the Court finds this factor favors transfer.

### *iii. Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral. The Court agrees.

### *iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral. The Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Moot |
| Availability of compulsory process to secure the attendance of witnesses | Strongly in favor of transfer |
| Cost of attendance for willing witnesses | In favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Moot |
| Local interest | In favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

The Court must account for the MDL process and judicial efficiencies it inherently affords. Given that this case will benefit from judicial efficiency regardless of transfer, the Court's analysis is focused on the events of trial. Alternatively, even if the factors listed as moot weighed against transfer, this Court would still find this case warrants transfer to the NDCA. After review of the evidence and parties' briefing, it is clearly more convenient to hold trial in the NDCA.

Defendant's Motion is therefore **GRANTED**. The case is transferred to the NDCA for trial only. Defendant is ORDERED to bring a motion for entry of this order when the case is ready for transfer at the conclusion of the pretrial proceedings.

SIGNED this 19th day of October, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE